IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kelvin A. Dunbar, #145969,<br><br>Plaintiff,<br><br>v.<br><br>The New Ellenton Police Department, Lt. Hugh Ray, Chief Johnny Hamilton, Officer Detroit Spires and Dep. Mark Warchol,<br><br>Defendants. | CIVIL ACTION NO. 9:08-2436-HFF-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights during his arrest by the named Defendants.

The Defendants[1] filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on November 16, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 17, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion

[1]One of the originally named Defendants, Johnny Hamilton, was killed in an automobile accident in January 2009. See Court Docket No. 60. Another Defendant, Mark Warchol, has only recently been added, and has therefore not yet filed a responsive pleading.





on January 6, 2010, following which Defendants filed a reply memorandum on January 13, 2010, to which Plaintiff filed a sur reply on February 1, 2010.

Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his verified complaint[3] that the Defendants New Ellenton Police Department, Lt. Hugh Ray, and Patrolman Chris Spires acted with "deliberate indifference" when they assisted or allowed the Defendant Warchol, a Sheriff's deputy, to inflict physical injury on him. Plaintiff alleges that Ray and Spires "stood by and watched" Warchol "slam [his] head onto the hood of . . . Spires' patrol car . . ." Plaintiff asserts that the Defendant New Ellenton Police Department approved or authorized Ray's and Spires' conduct where the Police Department, through (now deceased) Chief Johnny Hamilton, had knowledge of prior acts where the Police Department and the Sheriff's Department had beaten the Plaintiff with "no probable cause to do so." Plaintiff further alleges that Warchol used excessive force when he continuously slammed Plaintiff's head onto the hood of Spires' patrol vehicle while his hands were handcuffed behind his back, three or four times, resulting in physical injury that required emergency treatment in the emergency room of the local

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[3]Plaintiff's complaint is a combination of Court docket numbers 47 and 50, the second of which is verified. In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Considering Plaintiff's pro se status, the undersigned has assumed for purposes of summary judgment that Plaintiff's entire Complaint is verified. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.





hospital.

Plaintiff alleges he was only wanted for a misdemeanor thirty (30) day charge, was not armed or dangerous, and that there was no imminent danger to justify the excessive force to which he was subjected. Plaintiff further alleges that he did not resist arrest, nor was he ever charged with resisting arrest. Plaintiff alleges that the Defendants were deliberately indifferent to his rights as well as grossly negligent, and seeks monetary damages and that all of the individual Defendants be terminated from their jobs as law enforcement officers. See generally, Plaintiff's Verified Complaint.

In support of summary judgment in the case, the Defendant Hugh Ray has submitted an affidavit wherein he attests that at all times relevant to this action he was a Lieutenant with the New Ellenton Police Department. Ray attests that on May 8, 2008, while on patrol, he spotted the Plaintiff walking behind a Texaco gas station in New Ellenton. Ray attests that he was aware that Plaintiff had an active General Sessions Bench Warrant for his arrest, and that after radioing for backup, he drove towards the Plaintiff who, upon seeing the affiant, took off running and, after a foot chase, entered a wooded area. Ray attests that he then called the Aiken County Sheriff's Office bloodhound team for assistance in locating the Plaintiff, and when several Aiken County Sheriff's Deputies arrived, a perimeter was set up and the bloodhound team entered the woods. Ray attests that approximately ten minutes later, he heard the bloodhound team say they were right on top of Plaintiff and could also hear them yelling "let me see your hands".

Ray attests that the bloodhound team then brought Plaintiff out of the woods and placed him over the right front hood of the Defendant Spires' patrol car in order to pat him down. Ray attests that he heard the deputies tell Plaintiff to "get back down" several times. Ray attests that





at the time he was approximately one hundred (100) yards away, but that he then walked towards the Plaintiff and asked if anyone had leg irons. After he placed the leg irons on Plaintiff, Ray attests that he noticed that Plaintiff had a small cut over his left eye. Ray then ordered Spires to take Plaintiff to the emergency room before transporting him to the Aiken County Detention Center. Ray attests that he does not know how Plaintiff sustained the cut above his left eye, and that he did not witness any officer use excessive force against the Plaintiff. Ray has attached to his affidavit a copy of a statement he filed with the South Carolina Law Enforcement Division (SLED) concerning this incident. See generally, Ray Affidavit, with attached exhibit.

The Defendant Spires has submitted an affidavit wherein he attests that at all relevant times he was an officer with the New Ellenton Police Department. Spires attests that on May 8, 2008, he responded to a call for backup to assist the Defendant Ray in apprehending the Plaintiff. Spires attests that as the Aiken County Sheriff's Office bloodhound team was removing Plaintiff from the woods, he moved his patrol car closer to where the deputies were located. Spires attests that as the deputies approached his patrol car, one of the deputies handed him a wadded up five dollar bill. The deputies then placed Plaintiff over the front passenger side fender of his patrol car, at which time Plaintiff stood up and asked where his five dollars was. Spires attests that one of the deputies placed Plaintiff back on the hood of his patrol car while he [Spires] informed Plaintiff that he had Plaintiff's five dollar bill and that he would give it to the jail staff to be returned to Plaintiff. Spires attests that Plaintiff then stood up again, with a deputy again placing Plaintiff back on the hood of his patrol car.

Spires attests that Plaintiff complained that the hood was hot, at which time Spires was asked by the Defendant Ray to retrieve his leg irons from his patrol car. Spires attests that he





did so and that Ray then placed the leg irons on Plaintiff. Spires attests that he then placed Plaintiff in the back of his patrol car and took Plaintiff to the hospital before transporting him to the Aiken County Detention Center. Spires attests that Captain Alesia Parks accompanied him to the hospital, where Plaintiff received butterfly bandages and was then transported to the Aiken County Detention Center. Spires attests that he does not know how Plaintiff sustained the cut above his left eye, and did not witness any officer using excessive force against the Plaintiff. Spires further attests that his patrol car video does not show the incident in question, as his dash camera was not activated at the time. Spires has attached to his affidavit a copy of a voluntary statement he provided to SLED regarding this matter. See generally, Spires Affidavit, with attached exhibit.

The Defendants have also submitted an affidavit from Alesia Parks, who attests that at all relevant times she was a Captain with the New Ellenton Police Department. Parks attests that on May 8, 2008, she responded to a call for backup to assist the Defendant Ray in apprehending the Plaintiff. Parks attests that she was located on the perimeter of the search area when the Aiken County Sheriff's bloodhound team announced that they had located the Plaintiff and were removing him from the woods. Parks attests that she proceeded to the location where she observed Ray, Spires, and another officer sitting in their vehicles. Parks attests that when the Aiken County Sheriff's Deputies radioed that they had Plaintiff in custody, she proceeded to that location, right behind the Defendant Ray. When she arrived, Plaintiff was already handcuffed and was bent over the hood of the patrol car. Parks attests that Ray advised Spires to retrieve a pair of leg irons from his patrol car, and that Ray then placed them on the Plaintiff. Parks attests that she heard Plaintiff say "you'll did not have to do me like that. You'll know that was not right". Parks attests that she also heard an Aiken County Deputy state that "that is what happens when you run through the woods





at night - I guess you did not see that tree".

Parks attests that Plaintiff was turned over to Spires, who was advised by Ray to take Plaintiff to the hospital because Plaintiff had a cut near his eye. Parks attests that she followed Spires to the hospital, where Plaintiff received medical care, and then followed Spires to the Aiken County Detention Center, where Plaintiff was booked. Parks attests that she does not know how Plaintiff sustained the cut above his left eye, and did not witness any officer use excessive force against the Plaintiff. Parks has attached to her affidavit a copy of a statement she gave to SLED regarding this matter. See generally, Parks Affidavit, with attached exhibit.

The Defendants have also attached as Exhibit D to their motion a copy of a Medical Summary Sheet dated May 8, 2008.[4] This document indicates that the patient was treated at the hospital emergency room for a superficial laceration and left leg contusion. The patient was prescribed Motrin, stristrips were applied to the laceration, and he was then "cleared for jail". See generally, Defendants' Exhibit D.

Finally, the Defendants have attached a copy of the results of the investigation by SLED into this incident, as well as a letter from the Solicitor of the Second Judicial Circuit stating that he had reviewed the results of the investigation and found no criminal wrongdoing on the part

---

[4]Although Defendants represent in their brief that this is Plaintiff's treatment record, this document does not contain a name, nor is there any authentication affidavit or similar type document identifying this medical summary as relating to Plaintiff's care. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda and oral argument are not evidence.]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; *cf.* Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence]. While Plaintiff does not dispute the authenticity of this document or that he is the patient referred to in the document; see, discussion of evidence, infra; Defendants are nevertheless directed to file an affidavit with the Court authenticating this exhibit so that the District Judge will have it as part of any review of this Report and Recommendation.





of either Spires or Ray. See Defendants' Exhibits E and F.

In opposition to the Defendants' motion, Plaintiff has submitted an affidavit wherein he attests that on May 8, 2008 the Defendant Warchol slammed his head on the hood of Spires' patrol car, and that the Defendants Ray and Spires "stood by and did nothing to protect my right as a citizen." Plaintiff further attests that when he asked Warchol the reason for his arrest, Warchol slammed his head down on the hood of the patrol car, at which time he felt blood running down his face or cheek. Plaintiff attests that he asked Warchol why he had slammed his head on the hood, and that Warchol responded by once again slamming his head while making a derogatory statement. Plaintiff attests that after a few seconds he asked Spires to assist him or regain control over the situation, and that when he asked Spires for assistance Warchol slammed his head on the hood again. Plaintiff attests that he then asked Spires to stop Warchol from assaulting him, but that Spires refused.

Plaintiff attests that while he continued to call for help, he noticed that Ray was also standing there, and that when he asked Ray to stop Warchol and for the reason for his brutal treatment, Ray responded that Plaintiff was a celebrity and that Plaintiff knew he could not get away. Plaintiff attests that when he asked Ray why he was letting Warchol treat him the way he was, they all laughed and Ray stated "because you are Kelvin Dunbar and you are stupid as hell." Plaintiff attests that he then saw Captain Parks, and that when he complained to Parks about his treatment and that he needed medical attention, "they" proceeded to put him in the patrol car and transport him to the Aiken County Detention Center. Plaintiff attests that when he asked Spires the name of the Sheriff's deputy who had treated him so roughly, Spires refused to give him that information. Plaintiff attests that he received stitches above his left eye and was then taken to the Detention





Center. See generally, Dunbar Affidavit.

Plaintiff has also attached several documents to this affidavit, which include the medical summary provided by the Defendants as Exhibit D. Plaintiff does not contest that this is the medical summary from his hospital emergency room visit, although he argues that his injuries were more extensive than is shown in that document. The remainder of Plaintiff's exhibits (collectively Plaintiff's Exhibits A-C) are primarily copies of the exhibits already offered by the Defendants, including copies of portions of the Defendants' affidavits.

Plaintiff has also submitted a second affidavit wherein he reiterates his allegations, and states that the medical summary document submitted by the Defendants "cannot be relied upon".

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).





Plaintiff alleges that he was subjected to excessive use of force in violation of his Fourth Amendment Rights,[5] and seeks monetary damages under 42 U.S.C. § 1983.[6] Under the Fourth Amendment, claims of excessive use of force during an investigatory stop or arrest are considered under an "objective reasonableness" standard. This test requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985); Sweatt v. State of Maryland, No. 89-3231, 1989 WL 126582 at **1 (4th Cir. 1989); White v. Town of Chapel Hill, 899 F.Supp. 1428, 1435 (M.D.N.C. 1995), aff'd 70 F.3d 1264 (4th Cir. 1995). When considering a police officer's actions under this "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the crime committed, whether the subject posed an immediate threat to the safety of the police officers or others, and whether the subject was actively resisting arrest or attempting to evade arrest. Graham, 490 U.S. at 396; see Foote v. Dunagan, 33 F.3d 445, 447-448 (4th Cir. 1994)[drawing of weapon, grabbing of car keys, and pulling driver out of car reasonable actions in investigative stop]; Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988).

---

[5]"The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997)(citing Graham v. Conner, 490 U.S. 386, 388 (1989)). Thereafter, the Fourteenth Amendment due process clause protects a pre-trial detainee from the use of excessive force that amounts to punishment. Graham, 490 U.S. at 395, n. 10. In the case at bar, the Fourth Amendment applies to Plaintiff's excessive force claim since the events he alleges transpired incident to his arrest.

[6]Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using their badge of authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417 (6th Cir. 1996).





What is objectively reasonable depends on what conditions exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham v. Connor, 490 U.S. at 396; see Greenidge v. Ruffin, 927 F.2d 789 (4th Cir. 1991). Further, even though not personally involved in the alleged act of excessive force at issue, a law enforcement officer who is otherwise a bystander but is confronted with a fellow officer's illegal act and possesses the power to prevent it but does not, may also be held liable for the act of excessive force. Randall v. Prince George's County, MD., 302 F.3d 188, 203 (4th Cir. 2002); see also O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2nd Cir. 1988)[observing that officer who stands by and does not seek to assist the victim could be "tacit collaborator"].

Reviewing the evidence submitted in the light most favorable to the Plaintiff, the undersigned does not find that Plaintiff has presented evidence sufficient to create a genuine issue of fact as to whether Ray and/or Spires are subject to liability under this standard. For either of these two Defendants to be liable under a theory of bystander liability, they would have to have observed, or have reason to know, both that a constitutional violation was being committed by Warchol, and had a realistic opportunity to intervene or to prevent the harm from occurring. Randall, 302 F.3d at 203-204; see also Anderson v. Branen, 17 F.3d 552, 557 (2nd Cir. 1994); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). Considered in the light most favorable to the Plaintiff, the evidence is sufficient to create an issue of fact as to whether both Spires and Ray were present and within a sufficient distance to have acted during the incident at issue (notwithstanding their affidavits to the contrary). However, even considering Plaintiff's sworn version as to what transpired to be true for purposes of summary judgment, no constitutional violation has been shown by these two Defendants





for the simple reason that no evidence of excess force of a constitutional magnitude is shown in the evidence.

Considered under the "objective reasonableness" standard for a Fourth Amendment claim of excessive use of force, it is clear from the evidence that Plaintiff was actively attempting to evade capture and had to be chased down in the woods by law enforcement officers aided by bloodhounds. Hence, the evidence, including exhibits provided by the Plaintiff, clearly show a need for physical force to be applied in order to take and maintain Plaintiff in custody. When Plaintiff was brought out of the woods, and while his hands were handcuffed behind his back, Plaintiff was put over the hood of the Defendant Spires' patrol car, presumably for a search of his person or to otherwise maintain control of him. Even Plaintiff concedes that he rose up off of the hood on several occasions, either in an attempt to speak to other officers or to question what was going on. Assuming further that Plaintiff sustained a cut to his forehead when his head was pushed against the hood of the car (and not during his chase through the woods), and even if a fact finder could otherwise conclude that this action was unnecessary, the evidence is not sufficient to give rise to a genuine issue of fact as to whether the force used was excessive for *constitutional purposes*. In order to maintain a constitutional claim, Plaintiff must have evidence to show not only that a Defendant acted with a "sufficiently culpable state of mind", but also that the conduct alleged was "objectively significantly serious." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Plaintiff's injury, even as self described, was not overtly serious, while the medical evidence submitted by the Defendants shows that it was only of a superficial nature. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994)[absent the most extraordinary circumstances, a plaintiff cannot prevail on a claim for violation of a constitutional right if his injury de minimis]; Winston v. City of Shreveport, No. 08-111, 2009





WL 3584486 at * 6 (W.D.La. Oct. 28, 2009)[No Fourth Amendment violation found even assuming arguendo that Plaintiff's contusions on her hip and forearm were caused by the officer's actions]; Steele v. District of Cola. Housing Authority, No. 02-1420, 2006 WL 335770 at * 7 (D.D.C. Feb. 14, 2006)[No Fourth Amendment violation where Plaintiff suffered no significant physical injury when 'slammed' against a wall while being handcuffed].

While Plaintiff disputes the extent of his injuries as is set forth in the exhibit from the hospital, Plaintiff is not a medical professional, and he has provided no medical evidence of his own to dispute the findings as reflected on the medical summary from the hospital as to the nature and extent of his injuries. Cf. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]. Therefore, there is simply no evidence to support a finding that Plaintiff suffered any significant injury as a result of Warchol's conduct. Plaintiff's own general and conclusory claim, unsupported by any corroborating evidence, that the force used against him was "excessive" is not alone sufficient to survive summary judgment. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions





couched as factual allegations]; see Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental injury, of course, is inadequate to survive a motion for summary judgment]; Norman, 25 F.3d at 1263 [absent the most extraordinary circumstances, a plaintiff cannot prevail on a claim for violation of a constitutional right if his injury de minimis]; Thaddeus-X v. Wodniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim].

In making the finding set forth hereinabove, the undersigned does not intend to minimize Plaintiff's complaint that the Defendants should not have engaged in the conduct alleged (again, assuming for purposes of summary judgment that the conduct actually occurred as alleged). However, based on evidence presented, no *constitutional* violation has been shown. Cf. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]. While Plaintiff may conceivably have a state law claim he could pursue arising from this incident, his assertion of a federal constitutional claim against Ray and Spires under § 1983 is therefore without merit and should be dismissed. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. Further, as Plaintiff has failed to present sufficient evidence to support his claim,





the Defendants New Ellenton Police Department and Johnny Hamilton (to the extent any claims asserted against this Defendant have survived his passing) are also entitled to dismissal of this case.

Finally, although the Defendant Warchol has not yet filed a responsive pleading, in light of the findings set forth hereinabove, it would serve no judicial purpose to allow this case to continue against the Defendant Warchol alone. Rather, this case should be dismissed, in toto. Plaintiff may then pursue a claim against these Defendants in state court under state tort law, if he so chooses.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' Motion for summary judgment be **granted**, and that all claims against these Defendants be **dismissed**. It is further recommended that the claims asserted against the Defendant Warchol also be dismissed at this time, and that summary judgment be granted in this case in toto.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

February 24, 2010

Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

